UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANSELMO RODRIGUEZ,

                Petitioner,

vs.                           Case No.   2:09-cv-584-FtM-29SPC
                           Case No.   2:06-cr-096-FtM-29SPC

UNITED STATES OF AMERICA,

                Respondent.
_____

## OPINION AND ORDER

This matter comes before the Court on petitioner Anselmo Rodriguez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #70)[1] filed on September 8, 2009.  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 and Incorporated Memorandum of Law on November 10, 2009 (Cv. Doc. #9).  Petitioner filed a Reply (Cv. Doc. #10).  For the reasons set forth below, the motion is denied.

I.

On August 3, 2006, a federal grand jury in Fort Myers, Florida, returned a two-count Indictment (Cr. Doc. #1) against

---

[1]The Court will make reference to the dockets in the instant action and in the related criminal case throughout this Opinion and Order.  The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

petitioner Anselmo Rodriguez (petitioner or Rodriguez).  In Count One, petitioner was charged with knowingly and willfully conspiring from May, 2004, to in or about October, 2005, to possess with intent to distribute and to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(vii).  In Count Two, petitioner was charged with possessing, using, carrying, brandishing and discharging a firearm on or about October 9, 2005, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

The case proceeded to a jury trial.  The District Court denied an oral motion for judgment of acquittal as to Count One, but reserved ruling as to Count Two until after the verdict because of "some initial reservations about the sufficiency of the evidence to support the conviction as to the firearm count." United States v. Rodriguez, 291 F. App'x 977, 979 (11th Cir. 2008).  Petitioner was found guilty on both counts by the jury.  (Cr. Doc. #39.)  In a November 8, 2007 Opinion and Order (Cr. Doc. #51), denying the oral motion for judgment as a matter of law as to Count Two, the District Court found the following:

> . . . [D]efendant recruited Wrixon Roa Rodriguez and Efrain Roa to operate two marijuana grow houses in Cape Coral, Florida. On September 26, 2005, the Cape Coral Police Department executed search warrants at each of these two grow houses and arrested Wrixon Roa Rodriguez and Efrain Roa; defendant was not arrested. Both witnesses then began cooperating with law enforcement, and both cut off their drug relationship with defendant as of the September 26, 2005 search warrants and arrests. On October 8, 2005, defendant shot at Efrain Roa; Roa

attributed this to the fact that he had reported
defendant to the police and shown the police defendant's
house on September 26. Defendant was arrested by the Cape
Coral Police Department in connection with the shooting.

The Court's concern was whether the October 8, 2005,
shooting was "during" and "in relation to" the commission
of the conspiracy to distribute or manufacture marijuana.
As to the "during" the conspiracy requirement, a
conspiracy generally continues until its purposes have
either been abandoned or accomplished, United States v.
Knowles, 66 F.3d 1146, 1155 (11th Cir. 1995), or it has
been terminated by the arrest of all conspirators, United
States v. Killian, 524 F.2d 1268, 1272 (5th Cir. 1975)[
]. "A conspiracy is deemed to have continued as long as
the purposes of the conspiracy have neither been
abandoned nor accomplished and the defendant has not made
an affirmative showing that the conspiracy has
terminated. A defendant can overcome this presumption of
continued participation only be showing that he
affirmatively withdrew from the conspiracy or that the
final act in furtherance of the conspiracy has occurred."
United States v. Harriston, 329 F.3d 779, 783 (11th Cir.
2003). In order to withdraw, a conspirator "must show
affirmative acts to defeat or disavow the purpose of the
conspiracy." United States v. Alred, 144 F.3d 1405, 1416
(11th Cir. 1998)(internal quotations and citations
omitted).

Here, both Wrixon Roa Rodriguez and Efrain Roa
clearly withdrew from the conspiracy by cooperating with
law enforcement in connection with the conspiracy after
their arrest. Defendant still remained a conspirator who
had not withdrawn or terminated his involvement, and
there was evidence of the involvement of other
conspirators in connection with the distribution of
marijuana. (Doc. # 46, p. 36.)  The evidence clearly
establishes that the shooting was not accidental or
coincidental, and the Court finds that the shooting could
potentially facilitate the drug conspiracy as retaliation
for cooperation with the police as an example to other
conspirators.

United States v. Rodriguez, 2007 WL 3333483, at ** 1-2 (M.D. Fla.

Nov. 8, 2007)(footnote omitted); (Cr. Doc. #51).  On December 10,

2007, petitioner was sentenced to imprisonment for a term of 78

months on Count One and 84 months on Count Two, to be served consecutively, followed by 60 months of supervised release. (Cr. Doc. #57.)

Petitioner filed a direct appeal, and on October 10, 2008, petitioner's conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals. United States v. Rodriguez, 291 F. App'x 977 (11th Cir. 2008). The Eleventh Circuit noted the following additional facts:

> The evidence at trial reflected that Rodriguez discharged a firearm at a co-conspirator after learning that the co-conspirator reported to law enforcement about Rodriguez's involvement in the marijuana cultivation operation. The co-conspirator's wife and child were nearby at the time of the incident, although neither suffered any physical injuries related to the incident. There is evidence that when a law enforcement officer approached the scene, Rodriguez pointed the firearm at the officer.

Id. at 979. In affirming, the Eleventh Circuit specifically agreed with the District Court's conclusions regarding Count Two.

**II.**

Petitioner raises the following issues in his 2255 motion and Memorandum of Law: (1) ineffective assistance of appellate counsel for "failing to argue on appeal that the district court erred in denying Petitioner a judgment of acquittal on Count I because the conspiracy between movant [Petitioner] and Wrixon Rodriguez had ended prior to the search of Wrixon's home on September 26, 2005"; (2) ineffective assistance of trial counsel for "failing to argue that he [petitioner] is not accountable for the relevant conduct of

-4-

Wrixon Roa Rodriguez under U.S.S.G. § 1B1.3."; and (3) ineffective assistance of trial counsel for "failing to advise movant about the Government's plea offer." (Cv. Doc. #2, p. 2.)  Because petitioner is proceeding *pro se*, his pleadings are construed liberally. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

## A. Ineffective Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  Generally, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010).  A court need not address both prongs of the Strickland test, however, if petitioner makes an insufficient showing as to either prong. Dingle v. Sec'y for the Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

"As to counsel's performance, 'the Federal Constitution imposes one general requirement:  that counsel make objectively reasonable choices.'"  Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d

1217, 1240 (11th Cir. 2010) (quoting Bobby v. Van Hook, 130 S. Ct. 13, 17 (2009)), cert. denied, 131 S. Ct. 177 (2010). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690). This judicial scrutiny is highly deferential, and the court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001). Further, "strategic choices made after [a] thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Reed, 593 F.3d at 1240 (quoting Strickland, 466 U.S. at 690-91). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not

what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"   Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

To show prejudice, petitioner is required to establish that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable.   Strickland, 466 U.S. at 687; Van Hook, 130 S. Ct. at 16.

The same deficient performance and prejudice standards apply to appellate counsel.   Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.   If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.   If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice.   Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).   Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.   Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

## B. Evidentiary Hearing Principles

A district court shall hold an evidentiary hearing on a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."   28 U.S.C. § 2255(b).   "[I]f the petitioner alleges facts that,

if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." <u>Aron v. United States</u>, 291 F.3d 708, 714-15 (11th Cir. 2002) (internal quotations and citations omitted). However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." <u>Id.</u> at 715. <u>See also</u> <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008). The Court finds that an evidentiary hearing is not warranted in this case.

## III.

### A. Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel provided ineffective assistance when he failed to appeal the district court's denial of the motion for judgment of acquittal as to Count One. More specifically, Petitioner disputes the date that the conspiracy with Wrixon Roa ended. Petitioner's Memorandum of Law in Support of Motion to Vacate states:

> The testimony of Wrixon Roa demonstrates that he was displeased with movant because he was not paid the money he was promised. As a result, Wrixon stated that he 'broke off' his relationship with movant to continue allowing movant to use his house for the purpose of growing marijuana. Wrixon testified that movant removed the majority of his equipment. Some of the equipment was left behind, only because movant could not fit everything into his truck. Wrixon also stated that he stole 18 marijuana plants [from petitioner] as compensation for the money movant never paid him.

> Wrixon Roa and movant's drug relationship ended well
> before the search of Wrixon's home and his subsequent
> arrest on September 26, 2005.

(Cv. Doc. #2, p. 7.)

As noted by the Eleventh Circuit, petitioner conspired with multiple persons, including Wrixon Roa, Efrain Roa, Alieda Ribon and her husband.  The District Court specifically found evidence of other conspirators, and Wrixon Roa testified at trial that the petitioner took a number of marijuana plants from Wrixon Roa's house "to my female cousin's house [Alieda Ribon]." (Cr. Doc. #46, p. 36.)  Wrixon Roa further testified that he saw the plants there, at the female cousin's house, "[a]bout three weeks before my arrest." (Id.)   Wrixon Roa also testified that Alieda Ribon's husband was involved, "her husband worked with me. He had his own truck.  He told me they had sold quite a few baby plants." (Id.)  Also, during trial, Efrian Roa testified with regard to renting a grow house with the petitioner:

> A: [W]e had spoken there he [petitioner] and I, in
> relation to planting some plants, some marijuana plants.
>
> Q: Was that your idea or was that his idea?
>
> A: That idea came from the two of us, from some time
> back. We lived in Key West.
>
> Q: When did you and he first talk about growing marijuana
> together?
>
> A: When we came to see the house in Cape Coral and he
> came to live at my nephew's house in Cape Coral.

(Cr. Doc. #64, p. 190.)   The Court found that the "[d]efendant
still remained a conspirator who had not withdrawn or terminated
his involvement, and there was evidence of the involvement of other
conspirators in connection with the distribution of marijuana."
(Cr. Doc. #51, p. 4; Cr. Doc. #69, pp. 4-5.)   Therefore, the
conspiracy was not limited to Wrixon Roa.

The issue of the petitioner being in a ongoing conspiracy was
also addressed in the Eleventh Circuit's opinion on appeal.   The
Eleventh Circuit, in its *de novo* review of the sufficiency of the
evidence for the convictions, affirmed the District Court's
findings that "Rodriguez 'still remained a conspirator who had not
withdrawn or terminated his involvement, and there was evidence of
the involvement of other conspirators in connection with the
distribution of marijuana.'"   Rodriguez, 291 F. App'x at 979
(quoting Rodriguez, 2007 WL at *2). Thus, the existence of the
conspiracy and the issue of additional conspirators was determined
at trial and affirmed on appeal.

Regardless of whether or not Petitioner was engaged in a
conspiracy with Wrixon Roa on September 26, 2005, he was found to
be guilty of participating in a conspiracy to distribute and to
manufacture marijuana from May, 2004, to in or about October, 2005.
The existence of the conspiracy with conspirators other than Wrixon
Roa was affirmed on appeal, and thus the second prong of the

<u>Strickland</u> test, that the result of the proceeding would have been different, is not met, and therefore the claim is without merit.

Furthermore, even if the conspiracy with Wrixon Roa had ended prior to the search of Wrixon Roa's home on September 26, 2005, the conspiracy was in existence during the time specified in the Indictment (from May, 2004, to in or about October, 2005) with Wrixon Roa, Efriam Roa, and Alieda Ribon. Since Wrixon Roa was not the only other member of the conspiracy and the petitioner does not deny the existence of the conspiracy itself, the issue is without merit.

Since an attorney is not ineffective for failing to raise or preserve a meritless issue, petitioner's counsel did not provide ineffective assistance with respect to Claim One. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1992).   The Court finds that appellate counsel was not ineffective for failing to appeal Count One.   Therefore, Claim One is denied.

## B. Ineffective Assistance of Counsel at Sentencing

Petitioner argues that trial counsel was ineffective for failing to argue that petitioner was not accountable for the relevant conduct of Wrixon Roa under U.S. Sentencing Guidelines Manual Section 1B1.3.   Petitioner raises two issues under this claim: (1) his trial counsel failed to argue that he was not responsible for the marijuana plants recovered at the time of Wrixon Roa's arrest; and (2) that he should not be held accountable

for the firearm Wrixon Roa fired at the law enforcement officer who arrested Wrixon Roa.

In his oral motion for a judgment of acquittal on both counts, trial counsel made the argument that the conspiracy had ended or alternatively, that petitioner had withdrawn and was not responsible for Wrixon Roa's conduct or possession of marijuana. (Transcript of Jury Trial - Day 2 of 3, Cr. Doc. #64, pp. 251-258.) Petitioner's counsel specifically argued, "There's no further conspiracy. . . . in its best light, this is a conspiracy that had come and gone." (Id. at 258.)  Because the trial transcript shows the attorney did raise the argument during the trial, the ineffective assistance at sentencing claim is refuted by the record.

Additionally, the Court found that petitioner was in a conspiracy with Wrixon Roa until Wrixon Roa's arrest on September, 26, 2005.  (Cr. Doc. #51, p. 3.)  The commentary to the U.S. Sentencing Guidelines Manual (2007) provides:

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.2 (2007).  Because the Court found the petitioner was still in a conspiracy to grow marijuana with Wrixon Roa on the day the plants were seized, he was

involved in a "jointly undertaken activity" to grow the plants. The petitioner's Presentence Report in Part A, paragraph 51, page 9, based its calculations on this guideline and totaled the number of plants that the members of the conspiracy had possessed during the conspiracy, for which the petitioner would be responsible. Petitioner was properly held responsible for the plants that were recovered at the time of Wrixon Roa's arrest and sentenced accordingly.  Petitioner has shown neither ineffective assistance of counsel, nor prejudice from his counsel's actions.

The second claim of error, that the petitioner should not be held accountable for the firearm Wrixon Roa fired at the law enforcement officer performing Wrixon Roa's arrest, is also refuted by the record.  Wrixon Roa's use of a firearm did not affect petitioner's sentence.  The petitioner's Presentence Report in Part A, paragraph 53, page 10, which was the calculation of the offense level for Count One states:

> Where, however, a sentence under 18 U.S.C. § 924(c) is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm is <u>not applied</u> in respect to the guideline for the underlying offense. U.S. Sentencing Guidelines Manual § 2K2.4 cmt. n.4. (2008).  Therefore, an increase of the offense level is not applicable.

Presentence Report, p. 10 (emphasis added).  Only the petitioner's own actions regarding the use of a firearm were taken into account in calculating his sentence, and not the usage of a firearm by

Wrixon Roa.   Therefore, the petitioner was not prejudiced by his counsel's actions, and the the claim is without merit.

## C. Ineffective Assistance of Counsel Re: Guilty Plea Advice

Petitioner's third claim is that his counsel was ineffective for failing to advise him that he could have pled guilty, and that his counsel did not advise him of a possible plea offer from the government.   Petitioner does not claim he was given deficient advice, rather that he was not advised at all about a possible guilty plea.   Based upon the record in this case, and finding no "reasonably specific, non-conclusory facts" to the contrary, petitioner is not entitled to an evidentiary hearing.   Saunders v. United States, 278 F. App'x 976, 979 (11th Cir. 2008)(no hearing is required where allegations are affirmatively contradicted in the record).

On April 24, 2007, petitioner pled not guilty at his arraignment (Cr. Doc. #9) and thereafter continued to profess his innocence throughout trial.   Petitioner's counsel filed an Affidavit that during their first meeting, on June 26, 2007, he informed petitioner that:

> if he pleaded guilty in a timely fashion it would reduce his sentence.   Further, I explained to him that if he cooperated with the Government it could reduce his sentence even further. I reiterated these issues with the Defendant every time I met with him to make sure that he wanted to go to a jury trial.   From the first meeting, the Defendant professed his innocence and would not admit to any guilt whatsoever. He was adamant about going to a jury trial and ultimately we did.

(Cv. Doc. #8, Cr. Doc. #71-1.)   Petitioner testified at trial,
adamantly denying all guilt.  When asked by his counsel at trial:

> Q: Mr. Rodriguez, Wrixon Rodriguez [Roa] says that you
> talked to him about a grow house and then you helped him
> build one in June of 2004. Do you recall that testimony?"

> A: That gentleman was, is, and will always be a liar.

(Q:Trial counsel A:Petitioner)(Cr. Doc. #64, pp. 261.)   When
petitioner was asked if he went to Miami with Wrixon Roa and "got
all these grow house materials?" He replied, "I don't have capital.
I didn't have any capital. I don't have any capital to buy the
accessories . . . ." (Id. at 263.)  When asked by his counsel if
there was an "agreement between you and Wrixon Roa whereby you'd
pay Wrixon Roa 50 percent of a grow house profit?" Petitioner
responded, "Oh, it's a lie." (Id. at 264.)  Petitioner's counsel
next asked, "And then Mr. Rodriguez [Wrixon Roa] testified that you
were going to give him only 10 percent and then you brought all the
stuff with him locally. Did that ever happen?" Petitioner
responded, "That's a lie. I don't have the capital cleaning offices
and doing yards, gardening. You can check that out." (Id. at 264.)
Additionally, petitioner stated, ". . . I never had marijuana in my
house." (Id. at 271.) The above excerpts from the petitioner's
testimony show that petitioner maintained his innocence throughout
the trial, and therefore could not have pled guilty even if a plea
had been offered.

In order for the defendant to plead guilty and for the court
to accept the guilty plea, it must comply with Fed. R. Crim. P.

11(3) which states, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." As affirmatively shown by the record, the petitioner pled not guilty (Minutes of Arraignment, Cr. Doc. #9) and maintained his innocence throughout his trial. Petitioner at no time showed a willingness to admit his guilt and the factual basis of the charges. Nor does petitioner claim he attempted to plead guilty and was prevented from doing so, but merely states in conclusory fashion that "he would have accepted the government's plea instead of going to trial." (Cv. Doc. #1; Cr. Doc. #70, p. 15.)

As to the possible "plea deal" argued by petitioner, there is no evidence in the record or provided by the petitioner that a plea agreement was ever offered by the Government. Additionally, the Government denies ever making a plea offer, "[b]ecause Petitioner always maintained his innocence, the United States Attorney's Office did not tender him a plea agreement and his case proceeded to trial." (Cv. Doc. #9, p. 16.) Therefore, it was not possible for the petitioner to have accepted a plea offer in this case as no plea offer was ever made by the Government. Nor could his trial counsel have been ineffective for not informing the petitioner of the non-existent plea offer. Thus the second prong of the Strickland test, that the result of the proceeding would have been different, is not met, and therefore the claim is without merit.

Accordingly, it is now

**ORDERED:**

1.   Petitioner's Motion to Vacate, Set Aside, or Correct Sentence § 2255 (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.   The Clerk of the Court shall enter judgment accordingly, terminate any pending motions, and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, ___ U.S. ___, 129 S. Ct. 1481, 1485 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Fort Myers, Florida, this __16th__ day of June, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record
Anselmo Rodriguez